UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

HANNAH KASS,

    *Plaintiff*

v.

LT. RAMIREZ,
OFFICER CORY BEIERMANN,
DET. BRIAN RANDOLPH THOMPSON,

    *Defendants*

CIVIL ACTION
NO. _____
**JURY TRIAL DEMANDED**

## COMPLAINT

### PRELIMINARY STATEMENT

This is a civil rights action brought under 42 U.S.C. § 1983 and raising supplemental state law claims against Defendants, individual Cobb County Police Department (CCPD) officers, concerning their unlawful detention and arrest, use of excessive force, and malicious prosecution of Ms. Hannah Kass on May 12, 2022.

### JURISDICTION & VENUE

1. This Court has jurisdiction over the subject matter of the complaint under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331 and 1343. Additionally, this Court has supplementary jurisdiction over state law claims under 28 U.S.C. § 1367.

1

2. Venue is proper where a substantial portion of the events giving rise to this suit took place within this district and where, on information and belief, Defendants reside in this district.

## PARTIES

*Plaintiff*

3. Plaintiff Hannah Kass is a resident of Madison, WI. Ms. Kass, a graduate student of geography and environmental studies at the University of Wisconsin-Madison, was in Atlanta observing and studying social movements related to the environment during the week of May 12, 2022.

*Defendants*

4. Defendant "Lieutenant Ramirez"[1] is or was, at all times relevant, an officer of the Cobb County Police Department. As described herein, Defendant Ramirez detained Ms. Kass without reasonable suspicion and arrested her without probable cause. He is sued in his individual capacity.

5. Defendant Cory Beiermann is or was, at all times relevant, an officer of the Cobb County Police Department. Defendant Beiermann participated in Ms Kass' arrest and transferred Ms. Kass, upon her arrest, to a hot police car which he intentionally left without rolled down windows or air conditioning for an extended period of time in hot weather. He is sued in his individual capacity.

---

1 Lieutenant Ramirez' first name is currently unknown to Plaintiff, as materials disclosed to Plaintiff through existing legal processes have been limited. Plaintiff seeks to amend this complaint to include his full name at a later date.

6. Defendant Brian Randolph Thompson is or was, at all times relevant, an officer of the Cobb County Police Department. Defendant Thompson swore out warrants for Ms. Kass' prosecution that were false.

7. All individual officer Defendants acted in concert and conspiracy, were jointly and severally liable, and, at all relevant times, acted under color of state law.

## FACTUAL ALLEGATIONS

8. Ms. Kass, a student of geography and environmental studies, was visiting colleagues in Atlanta during the week of May 12, 2022 as part of her Ph.D research on ecology, society, and social movements.

9. On the morning of May 12, 2022, the weather in the Atlanta area was roughly 90 degrees F.

10. Ms. Kass heard about what was advertised to her via social media as a lawful demonstration at the office building of Brasfield & Gorrie, a building contractor alleged to be engaging in an environmentally destructive construction project.

11. Ms. Kass attended the demonstration as an observer as an extension of her research project, along with two friends she knew from Wisconsin.

12. Individuals unknown to Ms. Kass engaged in what was apparently property destruction using fireworks and paint projectiles during this demonstration.

13. Ms. Kass left the area of the demonstration, not having engaged in any criminal conduct of any kind, and walked with her two friends back to her friend's vehicle.

14. Shortly afterward, the group began walking to a nearby ice cream parlor.

15. Defendant Ramirez, who was present on foot, flagged down the group and asked them what they were doing.

16. On information and belief, Defendant Ramirez and other officers had been monitoring the area looking for individuals who participated in the political demonstration.

17. Ms. Kass and her colleagues indicated that they were going to get ice cream.

18. Defendant Ramirez ordered them to stop.

19. One of Ms. Kass' colleagues asked Defendant Ramirez if the group was being detained.

20. Defendant Ramirez responded affirmatively.

21. No reasonable suspicion existed for this stop.

22. Ms. Kass was nonetheless questioned about her presence in the area.

23. Shortly afterward, she was arrested by Defendants Ramirez and Beiermann.

24. No probable cause existed for this arrest.

25. Defendant Beiermann transferred Ms. Kass to a squad car and drove her to a nearby parking lot.

26. Defendant Beiermann confiscated Ms. Kass' water bottle.

27. Defendant Beiermann then rolled up all the windows in the vehicle and turned off the car engine and the car's air conditioning system.

28. Defendant Beiermann left Ms. Kass in his squad car for several hours.

29. During this time, Ms. Kass had not been placed in handcuffs.

30. Ms. Kass was left in the hot car in roughly 90 degree F weather for roughly two hours.

31. The conditions were unbearable and caused Ms. Kass great distress and suffering.

32. Ms. Kass was left dehydrated and with heatstroke.

33. On information and belief, Ms. Kass' friends who were detained and arrested with her were also left in a squad car, but were given water and air conditioning.

34. No discernible justification existed for Defendant Beiermann to roll up all windows, turn off the air conditioning, and confiscate Ms. Kass' water bottle.

35. Eventually, another officer, believed to be Defendant Thompson, showed up, rolled down the windows, and allowed Ms. Kass out of the car, at which point she was photographed.

36. Ms. Kass was eventually taken to the Cobb County Jail.

37. She was still not given water or examined for her symptoms of dehydration or heatstroke.

38. Defendant Thompson met briefly with Ms. Kass.

39. On information and belief, no further information was provided to Defendant Thompson by Ms. Kass or anyone else.

40. Defendant Thompson swore out warrants against Ms. Kass for the offenses of "Criminal Damage 2ND Degree", in violation of O.C.G.A. Sec. 16-7-23(a)(1); "Terroristic Threats – Hazardous Substance," in violation of O.C.G.A Sec. 16-11-37(b)(3); "Giving False Name / Date of Birth" in violation of O.C.G.A. Sec. 16-10-25, a misdemeanor; and "Riot," in violation of O.C.G.A. Sec. 16-11-30. See Exhibit A.

41. No probable cause or arguable probable cause existed to for Defendant Beiermann to suggest Ms. Kass was responsible, through any theory of liability, for the offenses charged.

42. The warrants allege, falsely, that Ms. Kass was captured engaging in these offenses on cell phone video and security camera footage.

43. No such footage shows Ms. Kass engaging in these offenses.

44. Ms. Kass was kept in Cobb County Jail for roughly thirty hours in squalid and demeaning conditions without any medical accommodation for her dehydration or heatstroke.

45. The cell in which she was kept was covered in vomit.

46. Ms. Kass was kept in an upright chair for the entire night, making it impossible for her to sleep.

47. The lights were kept on during the entire night, further disorienting her.

48. In a reversal of the conditions she experienced in the squad car, the cell was kept at an extremely low temperature.

49. Ms. Kass was not given a blanket or other means to stay warm.

50. Eventually, Ms. Kass was released on a $20,000 bond.

51. At some time following Ms. Kass' arrest, Cobb County Police Department forwarded relevant case files to the Georgia Bureau of Investigation.

52. The allegations contained in the police reports and warrants, and allegations generally made by Defendants, became the basis for Ms. Kass' prosecution as a RICO co-conspirator in Fulton County, where the entire case file was forwarded to agents of the Georgia Bureau of Investigation.

53. Specifically, Ms. Kass was indicted as a RICO co-conspirator by grand jury indictment on August 29th, 2023 in Fulton County.

54. The indictment alleges that Ms. Kass is a RICO co-conspirator where she allegedly "vandalized a Brasfield and Gorrie office building in Cobb County." See Exhibit B (containing relevant excerpts from the indictment).

55. No basis exists for her prosecution in Fulton County exists other than the false allegations against her made by Defendants.

56. Ms. Kass has suffered greatly as a result of the events described <u>supra</u>.

57. Ms. Kass suffered significant pain and distress as a result of being locked in a hot car for several hours, developing heatstroke and dehydration.

58. Ms. Kass suffered great humiliation and distress by being kept in jail for thirty hours in squalid conditions.

59. As a result of her arrest, Ms. Kass was publicly humiliated and "doxxed" online by others accusing her of involvement in crimes she did not commit but was nonetheless arrested and charged with.

60. Ms. Kass' professional reputation and as an academic has suffered as a result of this public shaming which was proximately caused by Defendants' actions.

61. In particular, Ms. Kass was subjected to an investigation and disciplinary hearing by her university as a result of Defendants' allegations being forwarded by third parties to the university.

62. Furthermore, Ms. Kass' academic career has been disrupted as a result of continuing to have to travel to Fulton County from Madison, Wisconsin, to answer the ongoing charges against her which resulted from Defendants' actions.

63. This process has also been costly, requiring her to purchase flights and accommodations.

64. As a result of her arrest, Ms. Kass' bond conditions require that she avoid the Atlanta forest, whose destruction was the subject of the protest; this has not only caused Ms. Kass

great personal and emotional suffering, but has placed significant limits on her dissertation research which involves forest-related research.

65. Because Ms. Kass' detention and arrest and the subsequent transpiring events described above were the result of her lawful participation in a political demonstration, Ms. Kass' rights of expression have been chilled.

66. Ms. Kass expresses concern and weariness about participating in political speech or assembly because of the ordeal she has suffered.

67. Finally, Ms. Kass has experienced great emotional and psychological trauma as a result of this ordeal, necessitating professional healthcare intervention.

## CLAIMS FOR RELIEF

### COUNT I
**False Arrest / Unlawful Detention / Retaliatory Arrest & Selective Prosecution**
**U.S. Const. Amends. I, IV and XIV and 42. U.S.C. § 1983**
**Against All Defendants**

68. Defendants had a federal and constitutional duty not to conduct an investigatory stop against Ms. Kass without at least reasonable suspicion, nor to arrest her without probable cause.

69. Defendants in this case had neither.

70. Specifically, Defendants lacked reasonable suspicion to stop Ms. Kass and her companions when they were walking to obtain ice cream.

71. Upon detaining her, no information obtained through investigation established probable cause to arrest her.

72. Even assuming _arguendo_ that arresting officers had obtained sufficient information to arrest Ms. Kass with arguable or actual probable cause, any information gathered to arrest

her was the result of an unlawful initial detention and can therefore not provide any legal basis for her subsequent arrest.

73. Defendants had a further duty not to arrest Ms. Kass in retaliation for protected speech.

74. Ms. Kass' participation in a political rally as an observer is protected speech.

75. Ms. Kass' participation in the rally did not become unlawful as a result of acts of unlawful conduct by other individuals.

76. Where Defendants had no reasonable suspicion or probable cause to detain and arrest Ms. Kass, and did so based on their belief that she participated in a lawful protest, Defendants' unlawful detention and arrest were retaliatory and unlawful.

77. Furthermore, even were some reasonable suspicion or probable cause could have existed in arguendo, Defendants' decision to detain and arrest her as a result of her participation in protected speech constitutes selective enforcement and is therefore unlawful.

78. Ms. Kass' damages, including her pain and suffering described supra, were proximately caused by Defendants' unlawful detention and arrest.

## COUNT II
**Excessive Force**
**U.S. Const. Amends. IV, VIII, and XIV and 42 U.S.C. Sec. 1983**
**Against Defendant Beiermann**

79. Defendants had an obligation not to use excessive force against any person, including Ms. Kass.

80. Defendant Beiermann violated this duty by locking Ms. Kass in a hot car for several hours without air conditioning and after confiscating her water bottle.

81. The totality of the circumstances indicated that Defendant Beiermann's actions in doing so were objectively unreasonable and unnecessary, and constituted excessive force.

82. The excessive use of force caused the damages to Ms. Kass described <u>supra</u>.

## COUNT III
### Malicious Prosecution
### O.C.G.A. Sec. 51-7-40
### Against All Defendants

83. Defendants had an obligation not to carry out a criminal prosecution of Ms. Kass maliciously and without probable cause, causing her damage.

84. Defendants violated this obligation by swearing out warrants against Ms. Kass and making statements and allegations that became the basis of her prosecution in Fulton County.

85. Every Defendant played a role in the resulting initiation of legal process and prosecution embodied in both the arrest warrants and the grand jury indictment.

86. No factual basis existed for the arrest warrants or for the allegations indicated in the indictment, and Defendants had no reason to believe they did.

87. Nonetheless, they proximately caused the issuance of the warrants and the grand jury indictment.

88. Defendants' actions in issuing the warrants and causing the grand jury indictment proximately caused the damages to Ms. Kass described <u>supra</u>.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Kass respectfully requests:

1. A trial by jury;

2. Compensatory Damages as to all Defendants;

3. Punitive Damages as to all Defendants;

4. Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b) & (c) and as otherwise permitted by law;

5. Any additional relief that this Court deems just and proper.

Respectfully submitted this 13th day of May, 2024.

/s/ Amith Gupta
Amith Gupta, Esq.
GA Bar No. 149222
American Trial Law Litigators, LLC
925B Peachtree St. NE, #2151
Atlanta, GA 30309
Tel: (408) 355-5782
amithrgupta+law@gmail.com
